UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>IVAN REYES ARZATE,<br>    also known as "La Reina" | No. 17 CR 084<br><br>Judge Harry D. Leinenweber |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSH, JR., United States Attorney for the Northern District of Illinois, submits the following position paper as to sentencing factors. For the reasons set forth below, the government respectfully requests that this Court sentence defendant, IVAN REYES ARZATE, to a term of imprisonment of 120 months, a sentence well-supported by the factors to be considered under Title 18, United States Code, Section 3553(a).

**I.    Introduction**

On August 6, 2017, defendant was charged in a two-count indictment in this matter with conspiracy to obstruct justice in violation of Title 18, United States Code, Section 371 (Count One) and obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2) (Count Two). R. 40. On May 11, 2018, without a plea agreement, the defendant entered a plea of *nolo contendere* to both counts of the Indictment. R. 60.

## II. Defendant's Offense Conduct

The conduct underlying the offenses of conviction and much of the factual basis for the government's arguments regarding the applicable 3553(a) factors are set forth in the Presentence Investigation Report ("PSR"), and in much greater detail, in the Government's Version of the Offense. In summary, this defendant abused his position of trust and conspired with leaders of a high-level international drug trafficking organization for his own profit and, in doing so, violated a duty owed to the people of the United States, Mexico, and to the DEA agents he served with. This conduct merits an above-Guidelines sentence.

## III. Government's Corrections/Objections to the PSR

### *Offense Level*

Pursuant to Guideline § 3D1.2(b), Counts One and Two are grouped together into a single Group. PSR at ¶26. The base offense level for the Group is 14, pursuant to Guideline § 2J1.2(a). PSR at ¶27. Pursuant to Guideline § 2J1.2(b)(2), the offense level is increased by 3 levels because the offense involved a substantial interference with the administration of justice. PSR at ¶28. Pursuant to Guideline § 3B1.3, the offense level is increased by 2 levels because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission of the offense. PSR at ¶30.

Because defendant entered into a *nolo contendere* plea, there is no agreement between the defendant and the government, and the government reserved its

2

determination of defendant's acceptance of responsibility until sentencing. PSR at ¶22. For the reasons set forth below, the government opposes a reduction for acceptance of responsibility and calculates a final offense level of 19.

### *Defendant Should Not Receive a Reduction for Acceptance of Responsibility*

Because defendant entered into a *nolo contendere* plea, there was no agreement between the defendant and the government, including with respect to acceptance of responsibility. Indeed, as it does in most cases, the government reserved its position regarding defendant's acceptance of responsibility until sentencing. PSR at ¶21. Defendant should not receive a reduction for acceptance of responsibility.

Under U.S.S.G. § 3E1.1, a district court is to provide a two-level reduction in a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." However, the Guidelines also make clear that a "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, Application Note 3. Additionally, the Seventh Circuit has held that when a defendant enters a plea of *nolo contendere*, a district court may properly deny a reduction for acceptance where that denial is based on additional facts beyond simply the nature of the plea. *See United States v. Miller*, et al. 782 F.3d 793, 802-803 (7th Cir. 2015). For example, in *Miller*, co-defendant Bowser appealed his sentence and argued that the district court erred by relying on the nature of his plea of *nolo contendere* to [a] RICO charge…to deny him a sentencing

3

reduction for acceptance of responsibility." *Id.* at 803. In affirming the sentence, the Seventh Circuit explained that "because the district court evaluated the facts surrounding Bowser's plea and made specific observations about his refusal to acknowledge his association with a criminal organization," the district court did not err in denying defendant a reduction for acceptance of responsibility. *Id.*

Similarly, here, while defendant has entered a plea of *nolo contendere*, which is tantamount to a plea of guilty, he continues to deny any knowledge of the leak of information to Geronimo Gamez-Garcia, denies the nature of his historical connection to the Beltran-Leyva Organization, and indeed continues, through counsel, to claim that because his conduct was at least tacitly accepted in Mexico, that he did nothing wrong in this case.[1] As such, while the defendant spared the Court and the government resources in preparing for trial, he has not accepted responsibility for purposes of a sentencing reduction.

---

[1] Defense counsel has gone on-record with the press on various occasions in an effort to minimize the significance of his client's conduct, claiming that "[i]n Mexico, it's not unusual to meet with targets of an investigation…It happens all the time. The DEA gets very frustrated with it, but it's just an accepted practice under the Mexican model." (http://www.chicagotribune.com/news/local/breaking/ct-met-mexican-cop-leaked-informant-identity-20180511-story.html). Defense counsel has also noted that the defendant "doesn't think he did anything wrong under the Mexican model." (https://chicago.suntimes.com/news/ex-mexican-officer-ivan-reyes-arzate-plea-leaking-info-drug-cartel/). "Mexican cops 'meet with cartel members in Mexico all the time. And you have cartels giving money to federal police to bust their friends and enemies and get them out of the business. Here [in the U.S.] the FBI agents go and talk to the wiseguys. How is that any different?'" (https://www.thedailybeast.com/the-deas-dirty-cop-who-tipped-off-a-cartel).

*Final Guidelines Calculation*

Based on the above, and omitting the three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) and (b), the government submits that this Court should find a total offense level of 19. When combined with defendant's criminal history category of I (PSR at ¶41), defendant's offense level of 19 yields an advisory sentencing Guidelines range of 30 to 37 months' imprisonment.

IV. **Analysis of the Sentencing Factors Set Forth in 18 U.S.C. § 3553(a)**

In this case, a sentence of 120 months is sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a).

A. *A Sentence Above the Guidelines Range Sentence Will Adequately Reflect This Very Serious Offense, Promote Respect for the Law, Provide Just Punishment, and Provide Deterrence.*

An above-Guidelines sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment and, importantly, provide deterrence. This case involves the corruption of a high-level law enforcement official by the most senior echelons of the Beltran Levya drug trafficking organization. Within the universe of narcotics investigations, there may well be no more serious offense. The defendant's conduct in this case, and in the decade before it, struck at the very heart of the DEA's mission, impeded its ability to conduct that mission, and placed in grave danger the lives of cooperators and American law enforcement agents. As the government has thoroughly detailed in its Government's Version, the defendant conspired directly with the leaders of the Beltran Leyva

5

Organization ("BLO") to provide sensitive information regarding United States investigations to cartel leaders in order to benefit and facilitate their drug trafficking operation. Moreover, the defendant used the vast resources and networks of the Federal Police, and the DEA, including people under his own control, to acquire and later provide sensitive information to drug traffickers, thus facilitating the shipment of untold amounts of narcotics into the United States for distribution.[2] The damage that those drugs, and the violence resulting from the drug trade, have caused to communities in Chicago and elsewhere in the United States is immeasurable. Only through a substantial sentence, well above that which the Guidelines prescribe, can the severity of this offense be properly addressed.

The consequences of defendant's conduct were vast: upon discovery of the leak, all DEA-Mexico operations virtually ceased until its source could be identified and contained. Even more troubling was that the disclosure of the identity of CS-1 to the cartel meant that the life of a DEA source was in imminent danger. Consequently, prosecutors and agents in the United States and Mexico had to act immediately in order to exfiltrate CS-1 from Mexico City, where he had been scheduled to meet with the targets of the investigation within days of the leak.

---

[2] Indeed the underlying narcotics investigation that defendant participated in obstructing involved, at a minimum, at least one shipment of approximately 800 kilograms of cocaine.

6

Only a sentence above the Guidelines range will sufficiently reflect the seriousness of the defendant's offense, including the extraordinary risk to human life that defendant's conduct posed to American law enforcement and individuals cooperating with their investigation. Moreover, only such a sentence can adequately reflect the magnitude of this betrayal of trust. The United States government provided the defendant with training in our country, facilitated his travel to and from Quantico to attend the DEA courses, and most importantly, entrusted him with sensitive law enforcement information including the identity of American agents and cooperating witnesses. This defendant betrayed every ounce of that trust, used it to his own economic advantage, and, in doing so, furthered the efforts of the very cartels he should have been endeavoring to shut down. He knowingly met with high-level cartel targets of a United States investigation, accepted payments from those cartel members, and provided sensitive investigative information to them. In the world of international narcotics investigations, one can hardly envision a more serious betrayal than the one committed by this defendant.

As noted above, defense counsel has made a public effort to minimize the significance of his client's conduct by claiming that defendant's conduct is merely business as usual in Mexico. This Court should resist defense counsel's invitation to normalize and excuse this insidious and dangerous conduct. The defendant betrayed the oath he took as a police officer, abused the trust placed in him by the United States government, and placed in grave danger the lives of American citizens. Only

an above-Guidelines sentence will appropriately reflect the seriousness of that conduct.

Additionally, an above-Guidelines range sentence will also provide deterrence by sending a strong message to others in law enforcement that when corruption affects a United States investigation and places at risk the lives of United States agents and cooperators, such corruption will be met with the most serious of consequences here in this country. This kind of conduct not only places at risk the lives of both civilians and U.S. law enforcement, but further erodes public trust and perpetuates the corruption as "business as usual" narrative that the defense urges upon this Court. In order to combat the international narcotics trafficking that has resulted in untold loss of life on both sides of the border, the United States needs responsible law enforcement partners who take seriously their obligation to that mission. Moreover, both American and Mexican citizens deserve to be able to have faith in their governmental institutions and a strong message must be sent to members of law enforcement that this kind of corruption will not be tolerated. The government asks that this Court's sentence reflect the obligation of United States governmental institutions to speak with one voice in sending the unequivocal message that this kind of conduct is not "business as usual;" not in Mexico and not in the United States. Accordingly, this Court should impose an above-Guidelines

8

sentence of 120 months in order to convey to this defendant, and to others, that such corruption is unacceptable, will be taken seriously, and will be punished accordingly.[3]

### B. *An Above-Guidelines Sentence is Necessary to Account for the History and Characteristics of the Defendant.*

A sentence of 120 months would also appropriately reflect the history and characteristics of the defendant. The defendant is a 46-year old Mexican citizen who has two children. PSR at ¶¶47, 49. According to the PSR, the defendant enjoyed a "good upbringing in a two-parent household" unblemished by abuse, violence, or deprivation. PSR at ¶48. In addition, the defendant received a college education in Mexico. PSR at ¶62. Also according to the PSR, the defendant owns his home and car in Mexico outright, PSR at ¶71, and the government notes that he has retained counsel in this case.

---

[3] For reference, in *United States v. Ronald Coleman*, 16 CR 723, a Chicago Police Officer was convicted of obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2). In that case, on one occasion, Coleman passed information about upcoming police enforcement activity on the West Side of Chicago to a known associate of the target of a federal investigation. As a result, the target relocated a significant amount of contraband including heroin and firearms. Judge Norgle sentenced Coleman to 60 months' imprisonment for that offense. When compared to Coleman's, the defendant's conduct here merits a comparatively higher sentence. The defendant provided ongoing assistance to international narcotics traffickers operating at an infinitely higher level than those in Coleman's case. Additionally, the defendant in this case operated on behalf of the Beltran Leyva Organization for a decade resulting in untold damage to countless investigations, operations, and risking countless lives. Without law enforcement sources like this defendant, drug cartels would be unable to function much less flourish and the sentence in this case must reflect the role defendant played in facilitating the operations of one of the most notorious drug cartels in Mexico.

9

Despite defendant's education, professional success, and comfortable lifestyle, he abused his position of trust for financial gain. Moreover, as the government's evidence demonstrates, the extent of that abuse and corruption was not limited to the charged offenses. Indeed, while the government believes that the offense conduct, alone, is serious enough to merit an above-Guidelines sentence, the government expects to present testimony of Witness A, a former high-ranking member of the Beltran Leyva Organization who will testify that defendant's corruption to the BLO dates back at least a decade. Such an extensive and long-standing history of corruption further militates in favor of an above-Guidelines sentence.

More specifically, the government expects that Witness A will testify that as early as approximately 2007-2008, he heard members of the BLO refer to "La Reina" as a source of law enforcement information regarding impending arrests and search warrants. Witness A will testify that he met the defendant in person to make payments to him and other senior law enforcement officials in exchange for information and the arrests of rival cartel members.

Additionally, in approximately 2008, following a number of seizures of narcotics in international waters, the Beltran Leyva Organization began to suspect that it had a DEA informant within its ranks. Subsequently, the BLO identified a Colombian trafficker who, following his arrest in Miami, began cooperating with the DEA. On orders from Arturo Beltran Leyva, members of the BLO kidnapped, tortured, and killed the Colombian source. Witness A will testify that the reason that

10

the BLO murdered the Colombian source was, at least in part, because members of the Federal Police compromised his identity. The witness identified the defendant as one of those police officers.

Witness A's testimony and defendant's historical connections to the BLO will be corroborated, at least in part, by the defendant's own admissions that he met personally with Arturo Beltran Leyva and his associates[4] and also by BBM interceptions in this case in which the targets of the investigation discuss the fact that "Ivan" was affiliated with the BLO.

The Guidelines in this case simply do not account for the scope or magnitude of this defendant's corruption or the immeasurable damage and risk to the lives of agents and cooperators his conduct has caused – to say nothing of the ongoing assistance he provided to one of the most powerful drug cartels in Mexico. The defendant's conduct in this case, and in the decade that preceded it, is a troubling example of the kind of corruption that has helped permit the international drug trade to flourish. To impose a Guidelines sentence would ignore the decade of history this defendant has had with the cartel and would fail to deter other would-be defendants from engaging in such conduct. Only an above-Guidelines sentence in this case is sufficient, but not greater, than necessary to adequately account for defendant's

---

[4] During a voluntary interview with DEA agents, defendant corroborated cooperator statements that defendant had indeed met in person with Arturo Beltran Leyva and two of his associates, Alberto Pineda Villa (a/k/a "Borrado") and Mario Pineda Villa (a/k/a "MP").

11

conduct and deter others from engaging in or contemplating engaging in such destructive conduct.

## CONCLUSION

WHEREFORE, for the reasons stated herein, in the Government's Version, and those the Court will hear during defendant's sentencing hearing, the government respectfully asks this Court to sentence the defendant above the Guidelines range to 120 months' imprisonment.

                                    Respectfully submitted,
                                    JOHN R. LAUSCH, JR.
                                    United States Attorney

By:    *s/Katherine A. Sawyer*
        KATHERINE A. SAWYER
        DEVLIN SU
        Assistant United States Attorneys
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 697-4089

Dated: August 22, 2018