UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 17-CR-00084-1 |
| v. ) | Honorable Harry D. Leinenweber |
| ) | Presiding Judge |
| IVAN REYES AZARTE ) | |

**DEFENDANT IVAN REYES AZARTE'S**
**OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND**
**POSITION PAPER AS TO SENTENCING FACTORS**

The Defendant, IVAN REYES AZARTE, through his attorney JOSEPH R. LOPEZ, pursuant to Federal Rule of Criminal Procedure 32 and Local Criminal Rule 32.1, submits his Objections to the Pre-sentence Investigation Report ("PSIR") and Position Paper as to Sentencing Factors, stating as follows:

**I.    Background**

Mr. Reyes Azarte comes before this Court charged with conspiracy to obstruct justice in violation of 18 U.S.C. §371. Mr. Reyes Azarte did not contest the facts and entered a plea of *nolo contendere* on May 11, 2018. He is scheduled to be sentenced on August 29, 2018.

This investigation began after a DEA confidential source provided information relating to a corrupt Federal Police Officer in Mexico City named Ayala who was assigned to the Sensitive Information Unit ("SIU"). Ayala provided a photograph of a confidential informant to a member of the Dominguez Drug Trafficking Organization ("DTO"). The photograph had been taken during a surveillance conducted by the SIU. Mr. Reyes Azarte was the Commander of the SIU. The meeting took place in Cancun, Mexico on April 22, 2016. DEA requested Reyes Azarte to provide surveillance and to photograph those in attendance. The confidential source was in attendance as well as traffickers Gamez and Vasquez.

On September 8, 2016, DEA requested additional support to surveil Gamez in Mexico City. Surveillance was not initiated due to time constraints. However, the next day, DEA learned that someone using the screen name "Ayala" had tipped off Gamez that he was a target of an investigation in the United States. Ayala provided information to Gamez, which included the photograph taken during the April 22, 2016 meeting in Cancun. The photograph was not the same as the one sent to Reyes Azarte, rather it was a copy taken from a computer which was discussed between Ayala and Gamez on September 8, 2015. Unbeknownst to Dominguez DTO, there was another CS providing information and intelligence to DEA during this investigation, which continued after the "Ayala" information was received by Gamez.

The investigation of the Dominguez DTO continued until at least November 3, 2016 when Dominguez was arrested. Dominguez, Gamez, and other members of the DTO were indicted in the Southern District of California, Southern District of New York, Southern District of Texas, District of Columbia and Northern District of Illinois. There was a C/I within the Dominguez DTO after the incident with "Ayala" who has not been able to corroborate that Reyes Azarte was "Ayala." The CS depicted in the Ayala photo was debriefed after the photo was sent in Colombia. During the initial debriefing, the CS mentioned he was under suspicion as working with the DEA with another individual. He told the DEA he returned to Colombia in September of 2106. (It should be noted the CS never contacted DEA after he left Mexico as he was required by the DEA who instructed the CS to notify DEA Officers with any information regarding the investigation.) The CS was debriefed again in the United States a few months later where he was informed he was going to be charged with narcotics trafficking. It is unclear where the CS is at this time but based on the last interview, he may either be in custody or in Colombia.

Additionally, allegations were made against Reyes Azarte during his work with DEA. In 2013, a CS informed the DEA that Reyes Azarte was paid by a rival cartel to dismantle another cartel. There were allegations of payoffs in suitcases at a place called "El Ranchito." Despite this information, the DEA continued working with Reyes Azarte in sensitive investigations. In 2015, a C/I told DEA that Beltran Leyva received information about a Colombian informant from Francisco Garza Palacios a Mexican Federal Police Officer who was stationed in Mexico City. In 2017, the same C/I told the DEA the information was provided by Reyes Azarte and Iban Delgado. Despite these allegations, the DEA continued to work with Reyes Azarte from 2013-2016 and bestowed certificates of appreciation on him for his valor and work with the DEA. Eventually, Reyes Azarte was called to a meeting with DEA after he lost his job in the SIU in November of 2016.

Reyes Azarte was interviewed at the American Embassy in Mexico City on February 2, 2017 by both DEA and Assistant United States Attorneys from this District. Reyes Azarte denied that he was the user of the code name Ayala, and the DEA has not recovered any evidence that Reyes Azarte is the Ayala who provided information to Gamez. Reyes Azarte admitted he meet with Dominguez, the target of the U.S. investigation, but denied he knew in advance of the meeting that Dominguez would be present.

As Reyes Azarte explained it to the DEA, he was there to get information on the violent "Plaza Bosses" in Tamaulipas. According to Reyes Azarte the replacement bosses would be less violent and would be willing to work with the Federal Police. Reyes Azarte told the DEA that Dominguez showed him the surveillance photograph from Cancun which Ayala had sent to Gamez. The AUSA then informed Reyes Azarte that he was going to be charged in the United

States and showed him the Complaint which was filed in this case. Reyes Azarte was told to consult legal counsel and was provided with the Federal Defender's phone number.

Reyes Azarte had three other meetings in Mexico. Each meeting was with S/A Ruben Garcia. Reyes Azarte denied that he was Ayala. S/A Garcia explained the American Justice System to Reyes Azarte. Garcia told Reyes Azarte he would be arrested and extradited to the United States. Reyes Azarte became distraught and bewildered. Eventually, Reyes Azarte agreed to come to the United States voluntarily and traveled here with S/A Garcia. Reyes Azarte cooperated in Chicago and sat for proffers with the government. However, there is no cooperation agreement in this case. Reyes Azarte was then indicted. Eventually, Reyes Azarte plead *nolo contendere* to the two-count indictment

Reyes Azarte met with targets of a United States investigation while he was the Commander of the SIU for the Mexican Federal Police. Reyes Azarte failed to disclose his meetings with the targets because he was put on leave the day after the last meeting. Charges were brought as a result of these meetings. This investigative technique is not uncommon in Mexico but in this case the DEA had the trafficker targeted for prosecution in the Unites States.

**II.     Objections to the Presentence Investigation Report**

Reyes Azarte objects to the Specific Offense Characteristic in paragraph 28, page 8 which increased the offense level by 3 points. The government has presumed that Reyes Azarte is Ayala but has no direct proof. Reyes Azarte told the DEA there were many other Federal Officers who he worked with who had access to the same information. In fact, the writer of the PSIR used the word presumably that the defendant was Ayala. Reyes Azarte insisted on numerous occasions that he was not Ayala but he also made damaging admissions to meeting with targets of the United States Investigation.

Reyes Azarte also objects to the information in Paragraph 37 as Offense Behavior Not Part of Relevant Conduct because the CS3 has provided inconsistent information. One proffer occurred on October 24, 2013 and the second on March 17, 2016. The information is not reliable and should be excluded pursuant to U.S.S.G §6A1.3(a). This information is summarized above.

**III.    Criminal History Computation**

The PSR calculated Mr. Reyes Azarte's criminal history score as a zero and he is in category I. Mr. Reyes Azarte agrees this is the correct computation.

**IV.    Position Paper as to Sentencing Factors and Response to Conditions of Supervised Release.**

    **A.    Sentencing Request**

Pursuant to 18 U.S.C. § 3553(a), Mr. Reyes Azarte respectfully requests that this Honorable Court impose a sentence of 17 months, which will equate to time-served at the time he is sentenced, and no supervised release. The Guidelines are now in their 13th year of being advisory. *United States v. Booker*, 543 U.S. 220 (2005). Indeed, this guideline range is simply one factor amongst many that the court must consider when determining the appropriate sentence for the individual defendant who stands before it. *United States v. Kimbrough*, 552 U.S. 85, 90 (2007). Further, when a district court varies from the Guidelines, its decision "may attract greatest respect when" it is based on the particular facts of a case."' *Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013) (citing *Kimbrough* at 109).

Here, the particular facts of this case and characteristics of Reyes Azarte show that a guideline sentence is not necessary. Here, Reyes Azarte voluntarily came to the United States to face prosecution. As noted below, Reyes Azarte was awarded numerous condemnations by the DEA and other Agencies. Despite the allegations in this case, Reyes Azarte participated in numerous coordinated joint operations against major drug traffickers.

  **B.** **A Sentence of 17 Months with no Supervised Release Fully Meet the Factors Set Forth in 18 U.S.C. § 3553(a)**

    1. *The Nature and Circumstances of the Offense and History and Characteristics of Mr. Reyes Azarte.*

  Reyes Azarte was a highly decorated Commander of an Elite Group of SIU Officers in the Mexican Federal Police who worked for and was trained by the DEA. Reyes Azarte was the lead commander when the leader of the Beltran Leyva Cartel, Edgar Valdez Villareal, known as "La Barbie," was arrested. La Barbie was recently sentenced to 49 years in Federal Prison. "An elite US-trained Mexican federal police squad acting on tips arrested Valdez and four others at a woody vacation home outside Mexico City in August 2010." *See* https://www.theguardian.com/us-news/2018/jun/11/la-barbie-cocaine-kingpin-sentenced-to-50-years-for-drug-trafficking (last visited August 7, 2018 as is the other website mentioned herein). At the time Felipe Calderon, Mexico's president, called Valdez "one of the most-wanted criminals in Mexico and abroad." *Id.*

  Mr. Reyes Azarte was born and raised in Mexico City. He enjoyed a middle-class life style and is a college-graduate. His brother is an attorney and his sister a business owner. From 2001 until 2016, Reyes Azarte was employed by the Mexican Federal Police. Many letters have been written regarding Azarte Reyes which have been filed. During his service in the Mexican Federal Police Reyes, Azarte received further training in Mexico and the United States. Many of the letters echo the same premise that Reyes Azarte was a man dedicated to education and family. It must be remembered that Reyes Azarte voluntarily came to the United States to face these charges because he is man who confronts problems rather than runs away from problems. It took an enormous amount of courage to board that plane and leave his family and friends behind not knowing when he would return.

6

His children, Ivan and Axel, described their life with their father and tell us how he spent time with them and taught them values and ethics. They described the relationship of their parents and how Reyes Azarte has always been caring of his ex-wife even after their divorce. Mr. Reyes Azarte's mother, Rosa Maria Azarte Archundia, described how her son was raised and how her son raised his children. Rosa describes the loss of her husband while Reyes Azarte was not there because he was incarcerated as a result of this case. Rosa noted her son's dedication to education and sports.

Reyes Azarte's sister, Rosa Isela, described her relationship with her brother and how well he took care of her. Rosa Isela noted that Reyes Azarte would provide her with advice regarding her children and her life as he was caring and generous with his knowledge. All the letters speak volumes of Reyes Azarte to such a degree that this aberrant behavior in this case is difficult to explain. Reyes Azarte has also received the following awards and certificates during the course of his career:

1. DEA Sensitive Investigative Unit Training Certification: November 21, 2002

2. Organization of American States, Inter-American Drug Abuse Commission and Royal Canadian Mountain Police Drug Enforcement International Observer Attachment Program: October 3, 2003

3. DEA Certification for Safety Clandestine Laboratory Seminar: July 22, 2005

4. FBI Latin America Law Enforcement Executive Development Seminar: September 5-28, 2007

5. FBI/Los Angeles Sheriff Department Executive Leadership Training Course: September 18 to October 16, 2008

6. DEA Sensitive Investigative Unit Training Program Advanced Course: July 2, 2010

7. DEA Award for Special Act or Service for Dedication to Duty and Outstanding Contributions: August 2011

8. DEA Certificate of Appreciation for Outstanding Contributions in the Field of Drug Law Enforcement: 2012

9. DEA Certificate of Appreciation for Valuable Assistance in Operation "Mama y Papa": December 18, 2013

10. DEA Certificate for Mexican Federal Law Enforcement Analysis Training: May 22, 2014

11. Certificate of Appreciation from New York Organized Crime Drug Enforcement Strike Force: April 2014

12. DEA Certificate for Mexican Federal Law Enforcement Analysis Training: May 22, 2014

13. ICE Certificate for Operation Diablo Express "In Commemoration of our bi-national effort forging friendship for our countries." January 2016

14. Department of Defense Joint Operations Course Certificate: October 22, 2015

15. International Student Academic Report with Remarks on Academic Performance, Awards, and Other Information: October 2015

Reyes Azarte was able to reach his pinnacle of success as he became the Commander of the SIU. DEA has known for a number of years that the SIU had a record of leaking information to violent and powerful drug traffickers. This is noted in an article entitled "Top Lawmakers Call for Investigation of DEA-Led Unit in Mexico." *See* https://www.propublica.org/article/top-lawmakers-call-for-investigation-of-dea-led-unit-in-mexico. Reyes Azarte is not mentioned in the article, but the point is that in Mexico, investigations led by SIU often involve meeting targets of the investigation as one Cartel snitches on another Cartel. DEA knows this and has accepted this practice in the past, which is a cost of running joint operations. However, many times it may involve payments to SIU officers for information which is the opposite of what occurs stateside. Here in the United States its DEA who pays informants for information. Either way the War on Drugs in Mexico knows few boundaries.

Further, Reyes Azarte has been in gun battles with traffickers alongside the DEA in Operation Mama and Papa where a gun battle resulted in the death of DEA target Gonzalo Inzunza Inzunza known as "El Prieto" on December 18, 2013. Reyes Azarte has risked his life for the SIU and the DEA in the execution of his duties. The characteristic of bravery should to be added to his resume.

Finally, in regard to the Ayala claim, the circumstantial evidence dispels the notion that Reyes Azarte was Ayala. First, as noted in the government's version, the photograph is different than the photograph Reyes Azarte was given. There are no records that trace back to Reyes Azarte which prove he was the person known as Ayala. Reyes.

All SIU members had access to the computers, and the photograph sent by Ayala was from a computer. Reyes Azarte had the same image on his Black Berry, which was a much clearer photo. Had he wanted to send a photograph, he could have used the one he had on his Black Berry as opposed to the poor-quality computer generated photograph which could be traced to an internet address.

    2.    *The Need for the Sentence Imposed*

Even before the Guidelines were advisory, sentencing courts were to treat all defendants as individuals. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human feelings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure." *Koon v. United States*, 518 U.S. 81, 113 (1996). The command of the parsimony provision of § 3553(a)(2) gives this Court great latitude to impose a sentence that fits both the crime and Mr. Reyes Azarte. It further "requires the district court to impose the least severe sanction necessary to achieve the four purposes of sentencing." *United States v. Jackson*, 537 F. Supp. 2d

9

990, 991 (E.D. Wisc. 2008). A sentence of 17 months is sufficient, but not greater than necessary, to satisfy the punishment purposes of 18 U.S.C. § 3553(a)(2) outlined below.

    a.    *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*;

Mr. Reyes Azarte's decorated career as evidenced by the numerous certificates he earned and admirable character traits distinguish him from the typical defendant who stands before this Court. He is a former decorated Commander of the SIU who engaged in unconventional methods of intelligence sharing and enforcement cooperation with his United States counterparts. It is a serious offense, but it should be balanced against the reason, which was to gather more information on the Tamaulipas Plaza Bosses.

Reyes Azarte has received just punishment – he lost his Commander Position at the SIU and is unemployed. Reyes Azarte worked as a policeman for 15 years. He knows no other occupation and is now stripped of his ability to return to his career in law enforcement. Reyes Azarte's only other skill is carpentry, which he may be his only employment opportunity upon release from custody and deportation from the United States.

    b.    *To afford adequate deterrence to criminal conduct*;

The goal of 18 U.S.C. § 3553 (a)(2)(B) is to deter criminal conduct. Criminal conduct for Reyes Azarte is definitively deterred. Reyes Azarte understands he was wrong and should have not engaged in this in this conduct. Mr. Reyes Azarte faces challenges daily because he knows his conduct has altered and detoured his future. Reyes Azarte is further deterred as he has led his family to danger with his contacts within organized crime in Mexico. The loss of his job as top cop of SIU is enough to deter other vetted SIU officers from engaging in this type of conduct.

    c.    *To protect the public from further crimes of the defendant*;

The public will be protected because Reyes Azarte is no longer in Command of the SIU.

      d.    *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.*

Mr. Azarte is not in need of any of these directives.

**V.**    **Conclusion**

Mr. Reyes Azarte is ready to return to Mexico to piece his life back together. Wherefore, the Defendant, Ivan Reyes Azarte, respectfully requests that this Honorable Court impose a sentence of 17 months followed by no supervised release. Such sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

                        Respectfully submitted,

                        */s/Joseph R. Lopez*

Joseph R. Lopez
Attorney No. 6186582
Lopez & Lopez, LTD.
53 West Jackson Blvd., Suite 1651
Chicago, IL 60604
(312) 922-2001

## **CERTIFICATE OF SERVICE**

I, Joseph R. Lopez, an attorney, certify that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the foregoing document was served on August 22, 2018, pursuant to the District Court's system as to ECF filers.

Respectfully submitted,

*/s/Joseph R. Lopez*

Joseph R. Lopez
Attorney No. 6186562
Lopez & Lopez, LTD.
53 West Jackson Blvd., Suite 1651
Chicago, IL 60604    (312) 922-2001